The next case is In Re Avandia Marketing Sales & Practices & Richard V. D'Appuzzo. Mr. Myers. Gary Martin Myers, appearing for the appellants, Your Honor.  Plaintiff appellant would respectfully submit that a review of the applicable case law under New Jersey law leads really inexorably to the conclusion that when a complaint includes the following three elements, a valid claim for express warranty has been stated. One would be the allegation that the manufacturer of a prescription drug represented that its drug was safe and effective for its intended use. The second would be that the complaint identified either the specific document or the specific category of documents in which the warranty that the drug was safe and effective was contained. And the third element would be that the complaint alleges that at the time the manufacturer represented that its drug was safe and effective, the manufacturer either completely failed to mention the existence of a specific risk it knew was associated with the use of its drug, or the manufacturer failed to disclose the true nature and severity of a specific risk. And I would submit to the court, I know that there have been numerous cases cited before Your Honors in the briefing, but I would submit that if you put all of those cases together, you come to the conclusion that those three elements state a valid claim for breach of express warranty under New Jersey law. But in this case... Now, you cited a number of cases that contained those points that you've outlined, but you haven't cited a pharmaceutical case. What's your best pharmaceutical case out of New Jersey? Well, Your Honor, out of New Jersey itself... Interpreting New Jersey law. I don't care where it is. Interpreting New Jersey law. The case is probably the best case for us, interpreting New Jersey law... Pharmaceutical case. A pharmaceutical case, as opposed to medical device case? Because I have a medical device case that I think really tees up the controversy before the court very, very nicely. And that's the case of Parker v. Halmedica Osteotics Corp. That's a case in which Judge Linares, in his initial decision in that case, held that the plaintiff failed to state a valid claim for express warranty. And in our brief, Your Honor, the appellant argued that the reason he reached that judgment in that case was because the plaintiff failed to identify a specific aspect of the hip implant system at issue in that case that was defective. Now, Judge Linares, that initial decision was in January of 2008. Was that a warning label case? I believe it was involving the labeling of the product that the complaint was centered around. It's a failure to warn of a drug case. Well, it's a failure to warn, but it's analogous to the situation we have here, but it was a medical device, a hip implant system. Well, there's a difference. There was a black box warning. There were a couple of different warnings, but there were black box warnings in this case. And the question, I guess, is how specific does New Jersey law require the warranty? And a lot of cases are just saying that safe and effective is not sufficient. Well, I think that's correct, Your Honor, but that's not all we say here. We make it very clear in our complaint in this case that what the defendant failed to do was to properly disclose primarily the cardiac risks, the risk of heart attack and other cardiac-related diseases. As a matter of fact, there is an allegation in paragraph 9 of our complaint that the drug actually increases one's chance of heart attack by over 40 percent. That's a very substantial risk involved in this case that we're saying was not disclosed. As a matter of fact, you argue the safe prong as opposed to the effective prong. Correct. That's correct. It may have been effective for diabetes, but there was a risk. Exactly. The safety issue is really the big issue that we say was not accurately disclosed. Yeah, but does the statement merely describe Avanta's use and, accordingly, say there's nothing explicit? It says nothing explicitly about the safety or heart problems. It's describing its use. It's not saying that every drug, even aspirin, which is advertised as good for headaches or problems of a minor nature, has side effects. There's nothing in your complaint that says that this never has nothing which will ever harm you. It's absolutely safe for every purpose whatsoever. Well, Your Honor, I do not believe that that approach that you are suggesting right now, and I understand that the defendants are asserting that argument, that there's something unique or special about prescription drugs so that the only way an express warranty can be created with respect to a prescription drug is if a plaintiff asserts or the manufacturer represents that there's absolutely nothing harmful. Well, I don't think they say that, but they say you have to identify the source of the material from which the warranty comes and the specific language. Now, in your whole complaint of a couple hundred paragraphs, the only thing you have is paragraph 259, which does not have a promise as to the specific, which you say was specifically breached. Well, the cases, if you look at all of the cases in this area, Your Honor, you will see that none of the cases require that when the manufacturer represents that their drug is safe and effective, that they also make the statement about the specific risk. That's what gives them. The Chipolong case is just the opposite. This court decided when the cigarette company said, look, you can smoke these cigarettes and there's no harm to your nose or your throat. It's absolutely safe. That's a promise. But there's no promise in this case that this drug is completely safe for everything and anything. They merely described the way it should be used. But every drug I think you have to recognize, you can't name a drug that doesn't have some side effect. That's correct, Your Honor. And they're merely describing here how you should take this. That's correct, Your Honor. But what I think the court really needs to focus in on here is the critical importance when a manufacturer has in its possession, and this is what we're alleging here, this is critically important, and this is what separates all of the cases under New Jersey law or otherwise, when the allegation is that a manufacturer has in its possession knowledge and information indicating that a specific drug has a specific risk that is potentially dangerous to the user but says absolutely nothing about that or understates it, even understates it, that creates an express warranty. Well, that's not so, sir. In order to have an express warranty, you have to have a promise. You have to have a warranty, a promise. What you're talking about is failure to warn. You're talking about a product liability case now. You're not talking about what you've got here. You're talking about merchantability, that it's not safe and they shouldn't give you warnings. You have a warranty case which can only be based on a promise, and also you have to identify where the promise is. Aside from paragraph, I think I got it right, 59, where is the promise in your third complaint concerning something which they allege that was a false statement? Well, Your Honor, our position, and I appreciate Your Honor disagrees with this, our position is that the promise is, when the promise that is made is that the drug is safe and effective, if that's all that was the allegation that we had, if we never stated that there was a specific risk that they misrepresented, there would not be, I would agree with you, there would not be an express warranty claim created. That's a product liability claim you're talking about. Well, I would submit that there is an overlap between a failure to disclose claim and an express warranty. You think that they're the same thing? I don't think that they're the same thing. But they could be. You say they could be the same thing. I think it's perhaps possible. I haven't thoroughly. I understand New Jersey law would be just the opposite. They are not related in either way. Well, I would respectfully disagree. Let me give you Judge Linares' statements in his second opinion in the Parker case. In his first opinion, he basically said exactly what you did. The only contention in the complaint was that there were representations made by the manufacturer that its hip implant system was effectively safe and effective. Then in his second opinion, he says this. Plaintiff's second amended complaint is a new factually specific allegation regarding the .5 percent defect rate printed on the product's label. Plaintiff alleges that her product malfunctioned, that evidence showed the rate of defect to be much higher than .5 percent, and that the failure of the Trident system to adhere to the published defect rate gives rise to a claim for breach of express warranty. Now, so once the specific allegation was added, that is what made the difference. Now, one analogy that could be made to the circumstances in this case is the listing of the adverse side effects. What is the class period? When did the class period begin? Well, I can- I'm not sure of exactly the date, Your Honor. No, but at least as I understand it, at least from 2000, there was a pretty specific warning that Avandia could exacerbate congestive heart failure and patients at risk for heart failure should be monitored. And then there were more explicit warnings subsequently to that. That's correct, Your Honor, but what was not disclosed was the full extent of that risk. And that's- And did they know? Did they know that what you're saying is the full extent of the risk? Yes, our contention is that they did. That's the allegation that we've made, and that's why we have that allegation in there that they were aware of the fact that it actually increases one's chance of heart attack by over 40 percent. What happened to New Jersey courts essentially said safe is where the benefits outweigh the risks. I'm sorry, Your Honor? Haven't the New Jersey courts essentially said safe means where the benefits outweigh the risks? I don't believe that there's a New Jersey case that says that, Your Honor. I'm not familiar with a New Jersey case that says that. Okay, we'll have you back on rebuttal. Okay. Mr. Vidani? Your Honors, may it please the Court, my name is Gabriel Vidani, and I represent the appellee GlaxoSmithKline. The point that was raised a moment ago is that nowhere within Mr. D'Apuzzo's third amended complaint did he point to any specific statement containing the words safe and effective, nor did he point to a promise or an affirmation of fact. He quoted just eight words in the management of type 2 diabetes mellitus. That is merely a statement of the FDA's approved purpose for this drug. The first time that we've seen the label was when the appellate was on appeal? That is correct, Your Honor. At no point in the district court did he cite to the label, nor did he point to any specific statement in the district court. And that's in spite of filing this action more than six years ago, amending his complaint three times and briefing two separate motions to dismiss. There was nothing in the complaint concerning things that, advertisements or whatever you want to call it, that were included for the 20 years that go along with the drug? Your Honor, the allegations, I mean, even up to the point of the express warranty claim are 259 paragraphs. They talk very broadly about other types of documents, but not with respect to their express warranty claim, nor do they even pin the express warranty claim on any specific statement. Mr. DePriso's counsel brought up the Parker case, for example, and I think actually that that highlights what is lacking here rather than reinforcing the position. There, Judge Linares dealt with a claim that was precisely analogous to what we're dealing with here, a general allegation about the safety and efficacy of an FDA-approved medical device. There were no specific statements alleged in that plaintiff's complaint, and Judge Linares found that they failed to meet the standards of Ipom and Twombly. Now, to illustrate the difference, which Mr. DePriso's counsel brought up again, is that in the second follow-up decision, one of the plaintiffs there did exactly what Mr. DePriso has not done. She amended her complaint to include a specific statement that was an affirmation of fact contained in the label about a 0.5 percent defect rate. The contrast between that and the general allegation about safety and efficacy of an FDA-approved product, I don't think could be clearer, and Judge Linares did uphold that second amended complaint. Well, you acknowledge you don't need any magic words, though. Not under New Jersey law, but it does not follow that just because you don't need formal words to create an express warranty that you don't have to identify the language that you're basing your claim on when you're filing a claim for breach. The two do not logically connect. Okay, but the district court here said you need to have those magic words. Pardon me, Your Honor? The district court here said you need to have those magic words. As I read the opinion, Your Honor, the district court said that you need to point to the exact language which the express warranty claim is based on. I think that is analytically distinct from saying that there's a certain type of word that needs to be stated to give rise to that claim. Even if we disagreed with the district court's analysis of what the law needs to be in an express warranty claim, we can still decide whether or not, in this case, there was a specific express warranty. Your Honor, I believe the answer to your question is yes, but I ask for a point of clarity as to what precisely you're suggesting the disagreement would be. Well, I'm suggesting that we can look at the merits here, whether or not we agree with how the district court decided this. I think it's a question of law as to whether an amorphous statement regarding the safety and efficacy of an FDA-approved product for its intended approved purpose can constitute warranty. Amorphous is not a question of law, though, so, well. I think your answer is yes to Judge Fischer. Yeah, the answer is yes. All right, let me ask you this question. I would think you're familiar with the Eastern District's decision in Knipe v. Smith-Kline. I am, Your Honor. How does that case, which went to trial, the motion to dismiss was denied, how does that case differ from this case? Your Honor, I think Knipe is distinguishable in several ways. Although it's been characterized in the briefing as merely relying on generalized statements about safety and efficacy, there were several particular statements at issue in that case about the use for that medication in off-label populations. So I think to contrast, one, they pointed to actual language, which they were challenging as the basis of the express warranty claim. Mr. DiPuzo has not done that here. And the nature of the statements that they were challenging there are vastly different than the general allegations at issue here. Couldn't a jury find that the language regarding the intended use of the drug could create a warranty that the drug was, in fact, safe and effective for the treatment of diabetes? What's wrong with that? Your Honor, I do not believe that they could reasonably find that that language constitutes a warranty in this context. I think as a matter of law, the statements are neither an affirmation of any particular fact as encountered in several of the other cases. But the average person reading this, I'm not law-trained. Look, when I say that this is pretty good for diabetes, is that it's safe, and it's intended for me to use if I have diabetes? I think the answer is no. One, this document is not intended for general consumption. It's an FDA medication. Therefore, there is a doctor who is interpreting this label. There are specialized meanings in the context that we're dealing with here, one of which was mentioned before. It means that the benefit, which is recognized, by the way, in New Jersey case law, and that's the Bailey v. Wyeth case, that the benefits appear to outweigh the risks. There are a litany of other warnings in the Avani label and in the labels of many other prescription medicines that state the potential ways that the drug could harm you. So no, I think the answer is that a jury could not reasonably find that those languages in this narrow context of an FDA-approved indication constitute an express warranty. You go with the BASCO opinion in the Second Circuit that it's got to be a contract promise, pure and simple. And I think BASCO really... But don't we like juries to, I'm not going to use the word speculate, if it's reasonable for them to find that the average person would say, well, this is safe for me to use. Your Honor, the statute, even New Jersey, so on the question of jury, this Court has recognized in other courts that when you have a statement that could plausibly give rise to an express warranty, beyond that, the questions of breach, that may be for the jury. But even the New Jersey courts, several of which Mr. D'Apuzzo cited too, they made the determination as a matter of law as to whether a statement could constitute a warranty in the first instance. And this is not just a matter of New Jersey law in this instance because there's still the application of Iqbal and Twombly that requires sufficient factual allegations. To the extent Iqbal and Twombly were in part decided to put the defendant on notice of what the problem was, weren't you really on notice by the complaint? Your Honor, I don't think... Constringing this purely as a question of notice, which, I mean, in their aspect of, to that extent, Iqbal and Twombly, I don't think this gave sufficient notice. The plaintiff in paragraph, I believe, 259 that was referenced before, broadly refers to Evandia's packaging and labeling. This is a product that's been on the market since 1999. That is not a small subset of documents, nor does it correspond and put this in the realm of other cases where there's been precise language alleged and a specific source identified. How much weight do we give to the fact that they used the language that was consonant with the FDA approval, safe and effective? I mean, how far does that carry you? Your Honor, I think that this is, to the extent that... I think it's an important consideration. I don't think it supports a broad determination here. Anything beyond that safe and effective, when used in reference to an FDA-approved indication, cannot give rise to a warranty, and that gets to the specialized meaning of those words in this context. I don't think that it gives, as Mr. DiPuzo has characterized, some sort of broad immunity to statements in the label. We don't contest that if there had been a specific statement like 0.5% defect rate in the Huber case, that's the Judge Linares' decision, that that could potentially give rise to a warranty or be a viable claim, and many of the other cases. I mean, look at it in terms of Cipollone, which was discussed before. There you have an outright, clear promise, absolutely safe, will not harm nose, throat, or ears. Just as well in the New Jersey Appellate Court decision with Sears vs. Roebuck, their statements about a lawnmower were at issue. Again, specific words identified, and those were absolute promises that the device was absolutely safe and that it would stop immediately upon contact with any object. So that's not how far I see BASCO, for example, the rationale there as applying. This is very narrow recognition that in this context, safe and effective cannot give rise to a warranty when speaking about the FDA-approved purpose. I will just follow up and remind the Court here onto the point of what is really at the heart of this claim. What's been described, in essence, is a failure-to-warn claim. Mr. DiPuzo brought a number of other accounts in this action previously in the district court, several of which were premised on allegations of a failure-to-warn. The district court dismissed those claims under New Jersey law as subsumed by the Product Liability Act. That issue is not challenged on appeal, and it's not an appropriate basis to essentially repackage a failure-to-warn claim into a contract-based claim where duties arise solely by operation of words between the two parties. I will just direct the Court's attention to one other case that I think is particularly on point here, interpreting the BASCO decision, which is the In re Meridia decision out of the District of Ohio. There they were applying a UCC express warranty claim, and there were directly analogous allegations to what we're confronting here. The plaintiff had claimed that the manufacturer of an anti-obesity drug there had represented its drug to be safe and effective in advertising. The Court held that that statement was not sufficiently clear to give rise to an express warranty as a matter of law, and as further support cited BASCO for the proposition that, but absent another modifying statement that says the product is absolutely harmless or free of all side effects, that that, again, cannot constitute a warranty. BASCO has never really been adopted by any New Jersey court, has it? No, Your Honor, not that I have seen. Then that would be the extreme position, BASCO. I wouldn't characterize it as extreme because I think the whole thing is relatively narrow. They're simply speaking about the use of safe and effective in this context. They're not talking about other types of statements, 0.5 percent defect rate, absolutely safe, so on and so forth. It's really just to those two amorphous terms. You're not saying that BASCO creates a de facto ban on all breach of express warranty claims in New Jersey, are you? Not at all, Your Honor. Only to the extent, and I wouldn't even say a ban. I think it recognizes that that narrow subset of a statement, which is at the heart of the allegation here, which, again, they haven't even pointed to a statement in the first instance that tracks the alleged warranty. So just to make that clear, we're not talking about an actual statement. This is still their general allegation that somewhere in labels and packaging GSK uttered that Evandia was safe and effective. BASCO merely says that that type of statement, were it to be referenced in a complaint, cannot give rise to an express warranty. Okay. All right. Mr. Vidoni. Thank you, Your Honor. Thank you very much. And we'll have Mr. Myers back on rebuttal. Thanks, Your Honor. Your Honor, I'd like to direct the Court's attention to the cases that we have cited on page 12 of our reply brief. And those are all state cases that have analyzed not New Jersey law specifically, but the exact same statute, identical word for word, and have all rejected the application of BASCO in the manner in which the Court has been discussing it with us today. One of those cases is Rite Aid Corporation v. Levy Gray, which rejected the idea that BASCO provides a blanket immunity for drug manufacturers from liability for express warranties based on the affirmative statements regarding the safety of the drug. Palmer v. A.H. Robbins Company rejected BASCO. That's the Supreme Court of Colorado. Rejected BASCO as a basis for overturning a jury's verdict on an express warranty claim based upon the defendant's representation that its birth control shield device was a safe and effective means of contraception. That was the only representation. That was the only promise. What I think the Court, and then Grinnell v. Charles Fizer and Company, that's a California case, upholding a trial court's decision to charge a jury on an express warranty claim arising from the defendant's affirmative representations regarding the safety of an oral polio vaccine. And then the other case, of course, which I think is a case I should have come up with immediately when Judge Fischer asked me, which is a case analyzing New Jersey that is best for us, and that is Knight. I think it is Knight v. Smith Klein Beecham. I thought that's what you were going to say. I was taken off guard on that one, Judge, and I apologize. But that's clearly the case, analyzes New Jersey law, rejects summary judgment, and holds that the defendants asserted in various articles, conferences, and journals to the medical community that Paxil was safe and effective for children to use, and that was sufficient to establish an express warranty claim. But here's why. Because here's where the specific comes in. It's not in the promise. It's in the ability of the plaintiff and the question, did the plaintiff identify something that the manufacturer did not state or left out or understated when it made its warranty? And in that case, it was the fact that children were prone to suicidality, is the word that they used, who took Paxil. And in the Palmer case, I believe there was some sort of a side effect of that birth control, of shield device that was not disclosed, was not revealed in the process of the manufacturer asserting and making that promise that it was safe and effective. And I think that that specific allegation of a misrepresentation is what makes the difference, and that's what we have in this case in our allegation that they failed to disclose the risk of heart attack. And I think that we're talking about something that we're in a situation here where the public policy implications are very significant, and I would submit that I would be surprised if the Supreme Court of New Jersey or any other New Jersey appellate court would conclude when this type of specific misrepresentation is provided and puts the defendant on notice of exactly what they're facing. This is our claim here, that you did not reveal the risk of cardiac arrest, the risk of cardiac disease that was associated with your product. What's so important about that is because if defendants are permitted, manufacturers of drugs are permitted to just make reckless or negligent representations about the safety and effectiveness of their drugs without stating the knowledge that's in their possession about specific problems, then I think we've got a dangerous situation on our hands. All right. Okay, Mr. Myers. Thank you very much, gentlemen. Thank you. We thank both counsel for a case that is very well argued and brief, and we'll take the matter under advisement.